# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NTT DATA INTERNATIONAL LLC and<br>NTT DATA SERVICES<br>INTERNATIONAL HOLDINGS BV<br><br>v.<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:21-CV-890-S |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute between Plaintiffs NTT DATA International LLC and NTT DATA Services International Holdings BV (together, "Plaintiffs") and Defendant Zurich American Insurance Company ("Defendant"). Plaintiffs filed a claim under a commercial property insurance policy for business interruption losses resulting from the COVID-19 pandemic. Plaintiffs seek a declaratory judgment that they are entitled to coverage, and assert claims for breach of contract, anticipatory breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Texas Insurance Code.

Defendant moves to dismiss the First Amended Complaint [ECF No. 12] on the grounds that Plaintiffs have failed to allege any direct physical loss of or damage to property that would entitle them to coverage. Defendant also argues that various exclusions in the policy preclude coverage. For the reasons set forth below, the Court **GRANTS** Defendant Zurich American Insurance Company's Motion to Dismiss [ECF No. 24].

### I. BACKGROUND

Plaintiffs operate a "global technology services company" that provides "information-technology services to clients in public and private sectors worldwide," including "infrastructure management, application and user support, cybersecurity and infrastructure emergency

preparedness support, and business process outsourcing." Am. Compl. ¶ 1. Defendant issued a commercial property insurance policy to Plaintiffs: Zurich EDGE Global Policy No. PPR1151052-01 ("Policy").[1] *Id.* ¶ 31. The Policy was effective July 1, 2019 to July 1, 2020. *Id.*

Plaintiffs seek coverage under the Policy, alleging property damage and business interruption losses sustained because of the COVID-19 pandemic. Plaintiffs allege that the virus that causes COVID-19, "SARS-CoV-2[,] was present on its properties and the properties of others, physically altering air, airspace, and surfaces, preventing [Plaintiffs] from using [their] properties for their intended purpose and function, and forcing the company to undertake extraordinary steps to protect its employees and ensure the continuity of its critical business operations worldwide." *Id.* ¶ 5. According to Plaintiffs, "the coronavirus caused massive direct physical loss of and damage to [Plaintiffs'] property and required [the company] to incur substantial out-of-the-ordinary expenses to ensure the continuity of its business operations." *Id.* ¶ 24. Among other expenses, Plaintiffs contend they were forced to "transition the company's workforce from client sites and company offices to their homes," provide personal protective equipment to their employees, and arrange for "deep cleaning and sanitization" of company facilities. *Id.* ¶¶ 24, 111, 129. In addition to the damage allegedly caused by the presence of the virus itself, Plaintiffs seek recovery of business interruption losses incurred as a result of "governmental orders closing business, restricting occupancy rates, and instructing people to stay at home." *Id.* ¶ 125.

The Policy insures "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property . . . subject to terms, conditions and exclusions stated in this Policy." Policy 17. The Policy defines "Covered Cause of Loss" as "all risks of direct physical loss of or

---

[1] The Policy is attached as Exhibit A to the First Amended Complaint and incorporated by reference. *See* ECF No. 12 Ex. A.

damage from any cause unless excluded."[2] Policy 67. However, the Policy contains several exclusions relevant to this dispute. The Policy excludes from "Covered Cause of Loss" damages resulting from:

- "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" ("Contamination Exclusion"). *Id.* at 26. "Contamination" is defined in the Policy as "any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, *pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent* . . . ." *Id.* at 67 (emphasis added).

- "the enforcement of any law, ordinance, regulation or rule regulating or restricting the . . . occupancy, operation or other use . . . of any property" ("Law or Ordinance Exclusion"). *Id.* at 26.

- "delay, loss of market, or loss of use" ("Loss of Use Exclusion"). *Id.*

The Policy specifically provides "Time Element Coverage" for loss of business income "result[ing] from the necessary Suspension of the Insured's business activities." *Id.* at 30. "The Suspension must be due to direct physical loss of or damage to Property (of the type insurable under this Policy) . . . caused by a Covered Cause of Loss . . . ." *Id.* The Policy provides such Time Element Coverage for direct physical loss of or damage to property at insured locations as well as certain other designated locations not directly insured. *Id.* at 38-39. In the event of a suspension of the insured's business actives, the Policy also provides coverage for "Extra Expenses incurred . . . to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a Covered Cause of Loss" ("Extra Expenses Coverage"). *Id.* at 32.

---

[2] The Policy is an "all-risks" policy, a "special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 504 (5th Cir. 2000) (quoting *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 461 (5th Cir. 1982)).

Finally, the Policy provides special coverage for certain types of losses and expenses, including:

- loss of business income "resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil or military authority that prohibits access to the Location. That order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or insured under this policy" ("Civil or Military Authority Coverage"). *Id.* at 37-38.

- loss of business income "resulting from the necessary Suspension of the Insured's business activities at an Insured Location if access to that Location . . . is physically obstructed due to the owner [or] landlord . . . prohibiting access to the Insured Location" ("Tenants Prohibited Access Coverage"). *Id.* at 46.

- "reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a Covered Cause of Loss to such Covered Property" ("Protection and Preservation of Property Coverage"). *Id.* at 45.

- "reasonable fees paid to the Insured's accountants, architects, auditor, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any . . . proofs, information or evidence required by the [insurer] resulting from loss or damage payable under this Policy for which the [insurer] has accepted liability" ("Professional Fees Coverage"). *Id.*

Plaintiffs notified Defendant of their ongoing losses in May 2020. Am. Compl. ¶ 7. After appointing an adjuster to handle Plaintiffs' claim, Defendant denied coverage in February 2021. *Id.* As a result, Plaintiffs seek a declaratory judgment that they are entitled to coverage. *See id.* ¶¶ 209-14. Plaintiffs also assert claims for: (1) breach of contract, (2) anticipatory breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) violations of the Texas Insurance Code. *See id.* ¶¶ 159-208.

Plaintiffs claim they are entitled to Time Element Coverage on three principal bases. First, Plaintiffs contend that the virus "caused physical loss of property by transforming the property from a satisfactory to an unsatisfactory state unfit for its intended functionality," thereby depriving them

of the use of their property. Pls.' Br. [ECF No. 29] at 10; *see also* Am Compl. ¶¶ 109-23. Second, according to Plaintiffs, the presence of the SARS-CoV-2 virus also caused "direct physical damage" to their property. *See* Am Compl. ¶¶ 90-108. Third, Plaintiffs assert that "governmental orders closing business, restricting occupancy rates, and instructing people to stay at home" constitute an independent loss of property. *See id.* ¶¶ 124-28. Plaintiffs also invoke the Policy's Civil or Military Authority Coverage, Protection and Preservation of Property Coverage, Tenants Prohibited Access Coverage, and Professional Fees Coverage as additional bases for recovery. *See id.* ¶¶ 138-139, 142, 164.

Defendant asserts that Plaintiffs' "claim fails because any coverage claimed . . . under the Policy requires an insured to have incurred 'direct *physical* loss of or damage' to property caused by a Covered Cause of Loss." Def's. Br. [ECF No. 25] at 1 (emphasis in original). Defendant also maintains that the Contamination Exclusion, Loss of Use Exclusion, and the Law or Ordinance Exclusion all preclude coverage. *See id.* at 18-26.

## II. LEGAL STANDARD

### A. *Motion to Dismiss*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

5

However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may also consider "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B.   *Insurance*

Courts interpret insurance policies under ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court's "primary concern is to give effect to the intentions of the parties as expressed by the policy language." *Am.*

*Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the Court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Id.* However, "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (internal quotation marks omitted) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003)). "[A] court should interpret an insurance policy in a way which (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3) avoids rendering parts of the policy inoperative or meaningless." *Great Am. Ins. Co. v. Emps. Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (cleaned up).

Under Texas law, the insured initially bears the burden of establishing coverage under the terms of an insurance policy. *O'Quinn v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018); *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). Once coverage is established, the burden shifts to the insurer to prove the loss is excluded from coverage. *O'Quinn*, 906 F.3d at 367. If an exclusion applies, the insured must then establish that an exception to the exclusion exists to restore coverage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (citing *Gilbert*, 327 S.W.3d at 124).

"Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Gilbert*, 327 S.W.3d at 133). An ambiguity does not exist, however, "simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* "When an exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning,

[giving] no deference to the insured's interpretation." *Id.* (citing *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). As such, cases involving the interpretation of insurance policies are particularly appropriate for summary disposition. *Gonzalez v. Denning*, 394 F.3d 388, 395 (5th Cir. 2004); *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

### III.   ANALYSIS

#### A.   *Coverage*

Because the Policy is an "all-risks" policy, Plaintiffs are entitled to coverage for direct physical damage to or loss of property resulting from any cause that is not excluded by the Policy. *Alton Ochsner Med. Found.*, 219 F.3d at 504. However, Plaintiffs have not established that any physical loss or damage occurred that would entitle them to coverage. *Hartford Ins. Co. v. Miss. Valley Gas. Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("[P]roperty insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property.").

Confronted with a case nearly identical to this one, the Fifth Circuit recently ruled that under Texas law, "'physical loss of property' . . . require[s] a tangible alteration or deprivation of property." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, No. 21-50078, __ F. 4th __, 2022 WL 43170, at *4 (5th Cir. Jan. 5, 2022). The property owner in *Terry Black's* operated a restaurant and filed a business interruption coverage claim under a similar policy after civil authorities prohibited in-person dining in response to the COVID-19 pandemic. In upholding the district court's denial of coverage, the Fifth Circuit found that Terry Black's had "failed to allege any tangible alteration or deprivation of its property." *Id.* The Fifth Circuit explained that "[n]othing physical or tangible happened to [the] restaurants at all. In fact, [Terry Black's] had ownership of, access to, and ability to use all physical parts of its restaurants at all times. And

8

importantly, the prohibition on dine-in services did nothing to physically deprive [Terry Black's] of any property at its restaurants." *Id.*

The same is true in this case. Plaintiffs have not experienced any loss of property that would trigger coverage under the Policy because nothing physical has happened to their property. Ultimately, Plaintiffs have alleged that the COVID-19 pandemic deprived them of certain types of use of their property; but crucially, neither the pandemic nor the presence of the virus itself caused physical damage to or tangibly altered Plaintiffs' property. *Id.* (coverage "requires a *loss of property*, not the loss of *use* of property. . . . This distinction is clear enough that had the parties intended the policy to cover a loss of use of property, they would have said so explicitly.") (emphasis in original).

Plaintiffs devote most of their briefing to "loss of property," but they also attempt to allege physical damage to property, describing at length how the virus physically alters the composition of air and transforms surfaces. *See* Am. Compl. ¶¶ 109-123; Pls.' Br. 9-10, 22-25. Plaintiffs assert, for example, that "respiratory droplets containing the coronavirus physically change the property by adsorbing to or otherwise becoming a part of its surface." *Id.* ¶ 117.

*Terry Black's* focused on the meaning of "direct physical loss," because there was "no dispute" that the plaintiff in that case had "not alleged it suffered direct physical damage to property." *Id.* at *3 n.4. However, numerous courts in Texas and across the country have found similar allegations insufficient to establish physical damage to property. *See, e.g., Vandelay Hosp. Grp. LP d/b/a Hudson House v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2021 WL 2936066, at *6 (N.D. Tex. July 13, 2021) ("[D]espite the repeated use of the word 'physical,' the third amended complaint does not plausibly plead that [the] property suffered a distinct, demonstrable, physical alteration."); *PSG-Mid Cities Med. Ctr., LLC v. Jarrell*, No. 3:20-CV-02477-E, 2021 WL 1894696, at *4 (N.D. Tex. May 11, 2021) (the term "physical loss of or damage" requires actual physical

9

alteration to the insured property, and temporary COVID-19 restrictions did not physically alter property); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) ("[W]e do not see how the presence of [viral] particles would cause physical damage or loss to the property."); *Manhattan Partners, LLC v. Am. Guar. & Liab. Ins. Co.*, No. 20-14342 (SDW) (LDW), 2021 WL 1016113, at *2 (D.N.J. Mar. 17, 2021), *appeal docketed*, No. 21-2089 (3rd Cir. June 7, 2021) ("[G]eneral statements that the COVID-19 virus was on surfaces and in the air at [an insured's] properties [are] insufficient to show property loss or damage."). These courts explained that "COVID-19 does not cause physical damage to property; it causes people to get sick." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 799 (S.D. Tex. 2021) (collecting cases). And even though the Fifth Circuit recognized that "'loss' and 'damage' have two distinct meanings" in this context, its holding that the COVID-19 pandemic did not cause physical loss of property supports the conclusion that it did not cause physical damage either. *Cf. Terry Black's*, 2022 WL 43170, at *4 ("Nothing physical or tangible happened to [the] restaurants at all.").

As in *Terry Black's*, all of the coverage provisions that Plaintiffs invoke here—the Policy's Time Element Coverage, Extra Expenses Coverage, Civil Authority Coverage, Protection and Preservation of Property Coverage, Tenants Prohibited Access Coverage, and Professional Fees Coverage—"require [Plaintiffs] to allege [they] suffered a direct physical loss of [or damage to] property."[3] *Terry Black's*, 2022 WL 43170, at *3. Because Plaintiffs have failed to adequately

---

[3] The Tenants Prohibited Access Coverage does not, by its own terms, require damages be caused by a Covered Cause of Loss. It does, however, require that access to property be physically obstructed. Policy 36. And the Policy provides that "Special Coverages," of which the Tenants Prohibited Access Coverage is one, "are subject to the Policy provisions, including applicable exclusions . . . in this section and elsewhere in this Policy." *Id*. Given that the Policy's general coverage provision requires direct physical loss of or damage to property, the Court reads the Policy to require the same for Tenants Prohibited Access Coverage. *See Great Am. Ins. Co.*, 18 F.4th at 490 (courts should read insurance policies in a way that harmonizes coverage). The Professional Fees Coverage requires such fees to be incurred to document "loss or damage payable under this Policy," which itself requires physical damage or loss. Policy 45.

allege either, they are not entitled to coverage under the Policy. Additionally, the fact that the Policy is a commercial property insurance policy supports denial of coverage because, like the policy in *Terry Black's*, the business interruption coverage afforded by here "is tied to the commercial property that is insured. The policy insures the commercial property, [and] thus covers business interruption that is caused by loss or damage *to the* commercial property." *Id.* (emphasis in original).

The government orders alleged by Plaintiffs do not constitute a Covered Cause of Loss for much the same reason that the virus itself does not. Plaintiffs recount that "countries, states, and localities across the globe began issuing States of Emergency, Public Health Emergencies, and Disaster Emergencies. Shortly thereafter, civil authorities throughout the world issued 'stay-at-home' and 'shelter-in-place' orders, travel restrictions, quarantines, and other orders, including orders requiring the suspension of most business operations."[4] Am. Compl. ¶ 127. According to Plaintiffs, these orders constituted "material deprivations of the physical functionality and usefulness of [their] premises." Pls.' Br. 12. Plaintiffs argue that such orders either constitute Covered Causes of Loss in and of themselves or trigger the Policy's Civil or Military Authority Coverage. Plaintiffs' argument is unavailing. As explained above, civil orders responding to the risks posed by a global pandemic do not satisfy the Policy's requirement that losses result from direct physical damage to or loss of property. *Terry Black's*, 2022 WL 43170, at *5 (civil order restricting dine-in restaurant service did not cause direct physical loss of property).

Nor do such orders trigger the Policy's Civil or Military Authority Coverage, because they were not issued in response to direct physical damage to or loss of property not belonging to Plaintiffs. Numerous other courts have reached the same conclusion. *See, e.g., Graileys, Inc. v.*

---

[4] Plaintiffs do not specify which orders allegedly disrupted their business operations.

11

*Sentinel Ins. Co., Ltd.*, No. 3:20-CV-01181-M, 2021 WL 3524032, at *2 (N.D. Tex. Aug. 9, 2021) ("Plaintiff has failed to demonstrate a nexus between property damage and either the presence of coronavirus or from the Dallas County and State of Texas Orders that constitute 'physical loss.'") (citing *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (business owners forced to shut down because of hurricane evacuation order were not entitled to similar coverage because they "failed to demonstrate a nexus between any prior property damage and the evacuation order.")); *DZ Jewelry*, 525 F. Supp. 3d at 800 ("[T]he type of civil-authority orders closing or limiting capacity at issue here [do not restrict access to a location] because of physical damage to other property or premises.").

Finally, the Contamination Exclusion also precludes coverage in this case. The Contamination Exclusion bars coverage for the "inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" because of the presence of, among other things, a "pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent." Policy 67. Though the Fifth Circuit did not reach the issue of whether a similar exclusion precluded coverage in *Terry Black's*, 2022 WL 43170 at *3, numerous district courts have held that similar exclusions preclude coverage for COVID-19 business interruption claims. *See, e.g.*, *LDWB #2 LLC v. FCCI Ins. Co.*, No. 1:20-CV-425-LY, 2021 WL 2744568, at *9 (W.D. Tex. July 1, 2021), *report and recommendation adopted*, 2021 WL 3486122 (W.D. Tex. July 26, 2021) (collecting cases); *Hajer v. Ohio Sec. Ins. Co.*, 505 F. Supp. 3d 646 (E.D. Tex. Dec. 7, 2020) ("Wherever it falls in the sequence of events, COVID-19 played a significant and substantial role in plaintiff's losses. Accordingly, the virus exclusion applies, and coverage is precluded."); *The Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-03768, 2021 WL 81659 (N.D. Ill. Jan. 7, 2021) ("It is unsurprising that federal courts interpreting identical Virus

Exclusions have nearly unanimously determined that these exclusions bar coverage of similar claims."). Because SARS-CoV-2 is a virus that causes COVID-19, the Contamination Exclusion bars coverage in this case.

Plaintiffs argue that an endorsement titled "Amendatory Endorsement – Louisiana," which removes "pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent" from the Policy's definition of Contamination, should be applied to claims in Texas. *See* Am. Compl. ¶¶ 60-76. This argument fails. The endorsement clearly states its geographic limitation in the title, even if it does not do so in the text of the endorsement itself. Other courts have rejected this exact argument, holding the endorsement is clearly state-specific and therefore limited only to Louisiana. *See, e.g., Manhattan Partners*, 2021 WL 1016113, at *2 n.3; *Boscov's Dep't Store, Inc. v. Am. Guar. & Liab. Ins. Co.*, No. 5:20-CV-03672, 2021 WL 2681591, at *9 (E.D. Pa. Jun. 30, 2021), *appeal docketed*, No. 21-2422 (3rd Cir. July 30, 2021). This Court agrees, and holds that the endorsement in question is limited to Louisiana and therefore does not apply to this case.[5]

Plaintiffs are not entitled to coverage because they have failed to allege any direct physical loss or damage as required by the Policy, and because the Contamination Exclusion precludes coverage. Accordingly, Plaintiffs' claims under the Policy for declaratory judgment, breach of contract, and anticipatory breach of contract fail.

### B. *Extra-Contractual Claims*

Plaintiffs assert extra-contractual claims for breach of the implied covenant of good faith and fair dealing and violations of the Texas Insurance Code. Plaintiffs allege that Defendant

---

[5] Because the Court concludes that coverage is precluded both because Plaintiffs have failed to allege physical loss of or damage to property and because the Contamination Exclusion operates to exclude coverage, the Court does not reach the question of whether the Loss of Use Exclusion or the Law or Ordinance Exclusion might also preclude coverage. *See* Def's. Br. 24-26.

breached the implied covenant of good faith and fair dealing because it failed to investigate and promptly pay Plaintiffs' claim. *See* Am. Compl. ¶¶ 171-78. Plaintiffs also claim that Defendant violated Chapters 541 and 542 of the Texas Insurance Code by engaging in deceptive trade practices and failing to promptly pay Plaintiffs' claim. However, when the insured is not entitled to coverage, common law bad faith claims generally do not survive. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *Progressive Co. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam); *Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 F. App'x. 778, 783 (5th Cir. 2009) (per curiam). Likewise, the insured generally cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."). Because Plaintiffs have not plausibly pleaded that they are entitled to benefits under the Policy, their claims for breach of the implied covenant of good faith and fair dealing and for violations of the Texas Insurance Code also fail.

### C. Leave to Amend

Ordinarily, a court should not dismiss a claim that fails to meet the pleading requirements "without granting leave to amend unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiffs have already amended their complaint once, and have only requested leave to amend to the extent they "failed to plead with sufficient particularity [their Texas Insurance] Code misrepresentation claims." Because Plaintiffs' losses are not covered under the clear terms of the Policy, the Court finds that any further amendment would be futile. *See Terry Black's*, 2022 WL 43170, at *7 (upholding denial of leave to amend because "[t]he

unambiguous terms of the policy preclude coverage of [the] claimed losses and therefore the district court did not err in denying leave to amend based on futility"); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (leave to amend may properly be denied "where the proposed amendment would be futile because it could not survive a motion to dismiss"). This includes Plaintiffs' extra-contractual claims, which fail because Plaintiffs are not entitled to benefits under the Policy.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant Zurich American Insurance Company's Motion to Dismiss [ECF No. 24]. The Frist Amended Complaint is therefore **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

SIGNED January 21, 2022.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE